May it please the Court, my name is Rob Farris-Olson, and I'm here with my co-counsel, Brian Miller, and we represent Jonathan Charles Bertelsen, the plaintiff and appellant in this matter. If I could actually reserve three minutes. Please watch the clock. And then if it's okay with the Court, my colleague Brian will do the rebuttal. Fine. Thank you, Your Honors. So this case basically comes down to a two-year period from November 2013 to August 2015, during which CitiMortgage lured my client into applying for a loan modification that he could never get. Then it led him- When you say lured your client, I mean, they told him that he might qualify for a loan modification. Do you have something stronger than that to suggest that, to support your opening comment that he was lured? Your Honor, that might have been a touch hyperbolic. Okay. However, once his bankruptcy was discharged, he did get a phone call on November 22nd, 2013, and I think that's the record at 328. But beyond that, he received a letter on December 13th, another one on December 27th, 2013, and the December 27th, 2013 letter in particular encouraged him to submit additional documents for his application so that he could lower his mortgage payments. So while lure may be, again, a bit hyperbolic, he certainly was encouraged to apply for this loan modification program. He was also encouraged to make payments. Correct, Your Honor. Well, afterwards they asked him. I don't think they actually encouraged him to make payments because they'd been rejecting his payments since 2009. He tried to make his payments prior to his bankruptcy, but CitiMortgage refused them and required him to make a payment in full. And so he had no option to make his payments going forward. Isn't that what the loan provides, though? If you fall in default, that you have to bring the entire amount current, including interest penalties, costs, and so on? Yes, Your Honor, and we have no problem with the, I guess, argument that they could do what they did. The problem is they can't fault him for not making payments when they don't let him make payments. Well, except that I think our case law says, and I think maybe this is in connection with foreclosure proceedings, that the debtor has to be readily able to bring the entire loan current in order to forestall the trustee's sale. Your Honor, that's correct, that in Montana under the Small Tract Financing Act, he would need to pay the delinquent amount. And he was never in a position to tender the full amount due and owing. At best, he was tendering payments on a monthly basis. Right, Your Honor, and the problem, though, is that he engaged in this process thinking there was a way out of this black hole, so to speak. He thought maybe at the end of two years, there might be a loan modification available for him. But what we saw is that on August 12, 2015, CitiMortgage sent him a denial letter saying, you are not qualified for HAMP, the Home Affordable Modification Program, or any supplemental modification because the investor on this loan does not allow those modifications. Is there any explanation in the record after the bankruptcy plan was confirmed, as I understand it, he was supposed to sell the house and he didn't do that? Is there any explanation for why he failed to meet his commitments under the bankruptcy plan? Your Honor, I'm not sure this is in the record that was submitted to you all, but during his deposition, he testified that he did try to sell the home during the bankruptcy and that he had a number of walk-throughs. However, because it's a higher-end home and this was in the middle of the recession, no one bought it. However, subsequent to the bankruptcy, the economy started going up, and so did home prices in Bozeman. Unfortunately, he was now $150,000 in arrears, and that just kept growing over the next two years. Is he still in the house? He is, Your Honor. How many months of payments has he missed now? At this point, I believe he defaulted in August 2008, so quite a few. Ten years? Yes. Anderson and Purr, P-U-R-Y-E-R, are two new Montana cases. I know they came out after your briefing. Are they relevant here and can guide our decision? Your Honor, I think they both are to a limited extent. However, I think Anderson is less relevant in this case. The only analysis the Supreme Court had in that case was that the Bank of America advised the borrower one day he qualified for a loan modification, and then three days later they said, you don't actually qualify. They corrected their mistake. But they upheld the dismissal in that case. Correct, Your Honor. But that was a different scenario than we have here where there's two years of solid advice-giving, apply for this modification. But no one told your client that he qualified. They just said, you should apply and you may qualify. You're right. But the deceptive act or the unfair act here was that there was no possible way for him to qualify because the loan modification programs weren't available. Because the investor was never going to give it to him. Correct. Well, what benefit did Citi get out of that? Why would they want to drag this out longer? Your Honor, what the Montana Supreme Court in cases like Jacobson and Morrow has said is that the benefit they gain out of that is not just a benefit to Citi Mortgage, it's an advantage over the borrower. And in this case, they gained an advantage over Mr. Berthelsen by increasing his arrearages by nearly $100,000. I didn't understand that argument. I mean, the cases which talk about increasing arrearages had to do with the bank telling the borrower to go into default or to stop paying the payments as they came due. But I didn't see that there was any evidence in the record that Citi Mortgage had told your client to do that. And so any arrearages would have been his responsibility for not making payments. So how does that, how does his arrearages have anything to do with what Citi's frustrating efforts in discussions with him about modification? Well, Your Honor, I think that's where we look to two out-of-district cases, Weigott and then Young out of the First Circuit, where it says that these increased transactional costs, such as increased arrearages, are damages, even if there's no obstructions involved. But why was there any causal relationship between the correspondence with the bank and his arrearages? His arrearages took place because he wasn't making the payments. Your Honor, if they had been upfront with him at the beginning and said, you are never going to apply for a modification, we will not consider you for a modification, he could have done a number of things. He could have avoided all of those, other than just the arrearages, the transactional costs of him applying, spending time, away from his practice as a real estate broker. So the transactional costs in the complaint that were indicated were extremely vague. It said lost time and income, but doesn't say income from what, and it doesn't say the value of the lost time. Then it talks about incidental expenses, like stamps, and then it says lost money, but no specific discussion of what that meant, and then emotional distress. So is that enough to be an ascertainable loss under the Act? Because the closest equivalent in Morrow was much more specific. Your Honor, this is different than Morrow, but the more recent case, getting back to Your Honor's question about Poirier, the court specifically held that there's a very low threshold for what constitutes an ascertainable loss. Is there a threshold at all? I mean, that would be my question, because obviously you would write out ascertainable loss if merely putting a postage stamp on a letter was enough. You'd just write it out of the statute. So what is it? How would you characterize that threshold? Your Honor, I think it's best to go back to Poirier, where it describes it, something as simply as paying for gas to go somewhere constitutes an ascertainable loss. And this is kind of within the whole context of the Multanican Superbook. So what isn't? I mean, in other words, what expenses would not constitute an ascertainable loss? Because obviously even just communicating with the bank takes a few minutes, even one communication, which I suppose if you were a lawyer you could be billing. So are you saying there's really no threshold and ascertainable loss in the statute doesn't have any meaning? Your Honor, I'm not saying it has no meaning, but I don't know what would not constitute an ascertainable loss. The lowest we know is what came out in Poirier, that gas to go somewhere or your time to go somewhere will constitute an ascertainable loss. Has the Supreme Court weighed in on what's their most recent decision on that issue? That's the Poirier v. HSBC bank. So beyond that, I think our complaint, so I guess the other thing I wanted to touch on since you talked about our complaint, first of all is that we filed the complaint in state court. And so in Montana, the pleading threshold is much lower. And so when this case was removed and the motion to dismiss was filed, we respectfully asked for leave to amend to fix any of those differences that might exist between federal and state pleading requirements. We were denied that opportunity with prejudice. However, as we noted in our brief, that was an error. And at least one court, the Luares Court out of California, agreed that even when negligence claims sound and negligent misrepresentation, there should be that opportunity to amend. And so we never had that opportunity. We never had the opportunity to amend it to make the ascertainable loss more clear. And we should have been given that opportunity. But beyond the opportunity to amend, I think our complaint adequately and plausibly alleged Consumer Protection Act claims. As this Court is well aware, there are two prongs under the Montana Consumer Protection Act, both unfair and deceptive. That's just the plain language of Montana Code Annotated 30-14-103. As long as one of those two things is proven, we have a plausible claim for a Montana Consumer Protection Act violation. And in establishing that, like this court held in Compton, we don't need to allege a duty if that's exactly what the district court did here. We also don't need to establish. But wasn't that discussion in the context that, I'll call it, a run-of-the-mind lender-borrower case is not enough to establish a duty? There has to be some affirmative promise or, I guess, in the one case, the banker had given counsel financial advice to the borrower for 20 years and she relied on the banker for making financial decisions. We don't have that kind of evidence here, do we? Your Honor, we do, but I think your question conflates the two claims, Consumer Protection Act and negligence. And in Compton, this exact issue was brought before this court regarding the Hawaii Consumer Protection Act, which is identical to Montana, and Hawaii has actually relied on our Baird case in the underlying case that this court cited in Compton. Well, I guess I was addressing the duty under the negligence claim. I'm trying to understand your argument with regard to what duty was breached in order to establish a general negligence claim. As Morrow put it, it's the duty to process a modification application in a manner that's not harmful to the borrower. So it's essentially don't lose. But the speed with which the bank processed the claim in that two-year period, is that the basis for your claim? It was too slow? That's some of it, your Honor. Even though he wouldn't have qualified because of the home loan bank's policies? That's some of it, your Honor, because over that time we saw his attorney's fees and costs increase from $3,500 to $10,000 and we saw his arrearages jump $100,000. So it's not just the speed, it's also— But those obligations would have continued whether or not the bank was processing his application for a modification or not, wouldn't they? Yes, your Honor, they would have. I mean, they're two separate—the contractual obligation is separate from the claim about how the bank handled the application for modification, which the case law says they're not obligated to even provide. Right, but it's once they assume that obligation, then they need to do it with due care. And that's what the Mendoca case out of Central District— Assume what obligation? To process the claim? Is that the obligation? To process the modification. But he has to show entitlement. It's a chicken and egg problem. If he isn't entitled to the modification, then does it matter how the bank processed it? Yes, because he's in a worse position now than he would have been had they not processed the modification. Wow. I mean, he's not making his payments or bringing his loan current. And what is it that the bank is now doing that's impeding his ability to meet those duties under the original mortgage loan? His arrearages are substantially higher than they would have been, and their actions have essentially prevented him from— Than they would have been if he had paid the payments as they came due, which was his obligation, right? Yes. However, he could have done things differently had he known he never would have qualified. And that's what those cases— What would he have done differently? Would he have deposited the monies in some sort of an escrow account? He didn't offer to do that. He could have, Your Honor, I guess performed an efficient breach. He could have tried to sell the house. He could have gone through a short sale process. He could have sought other remedies. But because he was continually encouraged that he may get a modification that was unavailable, he forewent those other opportunities. And those lost opportunities are what the Seventh Circuit in Wygod said constitutes damages, essentially, and so did the First Circuit in Young. You better save some time for your partner. Yep. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Regina McClendon, appearing for City Mortgage. I'm going to start by addressing the negligence claim. The Morrow case by the Montana Supreme Court carved out a very narrow exception to the general rule in Montana that a lender or a loan servicer owes no duty of care to a borrower. The exception in Morrow arose because of several factors that were present there, none of which are present here. Number one, the loan servicer advised the borrower to default. Number two, the loan servicer told the borrower he was, quote, locked for a modification, told the borrower the specific modified payment amount down to the penny, and told the borrower to make those reduced payments, told the borrower the term of the modification and what the new interest rate would be. The loan servicer told the borrowers to ignore the default notices that were coming in, and the loan servicer later told the borrowers over the phone that a modification had been approved. The critical part of the Morrow holding is at page 47 of the Court's decision. If the borrower has not been advised by the bank or has not relied on that advice, no fiduciary relationship exists. The Court went on to explain that advising a borrower to default to pay less than what's required under the loan documents, to ignore notices of impending foreclosure, and to avoid carrying the default is not the type of device common in an arm's-length relationship.  But isn't there some notion that in order to apply for a loan modification, the borrower has to be in default, and that that might explain why a bank would tell the borrower, stop making payments, and it's three payments, is it not? You have to miss three before you can apply. No, Your Honor. The HAMP regulations actually require the borrower to be either in default or imminent default. The phrase used is imminent default. Once a borrower is approved for a trial payment plan under HAMP, then they typically will make three reduced payments before being offered a permanent modification. None of that ever happened here. The investor on this particular loan, the Federal Home Loan Bank of Chicago, a government entity, did not participate in the HAMP program. In the government's HAMP program. Yes, so that was never an issue. And, in fact, Mr. Berthelsen did allege in his complaint that he was told years ago that he was not HAMP eligible. So all of the review that was going on for him was outside of the context of HAMP. Was there some other modification program that he might have been eligible for? Yes, Your Honor, and that's part of, I think that's also relevant to the Montana Consumer Protection Act claim because one of the claims is that City Mortgage told Mr. Berthelsen that he was eligible for a modification when that wasn't a true statement. And we provided testimony from a City Mortgage witness that was unrebutted on the summary judgment motion that explained that modification programs change all the time. And so you don't know until you get the application in the door what the borrower might qualify for. But in the Montana Consumer Protection Act, the trial judge dismissed it based on ascertainable loss. Is that true? No, not entirely. He also dismissed it based on the fact that there wasn't an allegation. Actually, I don't remember. I think he dismissed it because there was not an allegation of reliance. And there is no allegation of reliance in the complaint. Well, let's talk about the ascertainable loss because that is something I think everybody can agree is one of the bases in the failure to properly plead it. Do you agree with your co-counsel that the Anderson case, which obviously helps you on the negligence side, that the Anderson case also lowers the bar on what an ascertainable loss is to almost anything? I think that the Anderson case sets the bar low. The problem that we have here with Mr. Berthelsen's claim is that in Anderson, the court found that the Montana Consumer Protection Act requires a showing of harm and detrimental reliance. And there have to be allegations that but for the bank's representations, the borrower would have timely cured the default and avoided foreclosure. And there are no allegations anywhere in Mr. Berthelsen's complaint that but for Citi's representations to him, he would have been able to cure the default and avoid foreclosure. He acknowledged in his complaint and then he acknowledged in deposition several times that he was in default before he ever contacted Citi Mortgage. And he acknowledged in deposition that he hasn't tried to make a payment since 2010. And all of the claims that are at issue in this case because of a judicial estoppel ruling that has not been appealed and is not disputed, the only claims that are before the court now are events occurring from October 1, 2013 forward. He was already in default for years before any of these claims accrued. So I think that the court can affirm based on the detrimental reliance issue and the causation issue without having to reach the issue of whether he actually had an ascertainable loss. I would say that he doesn't for the reasons the court was saying earlier. This is someone who couldn't make his loan payments because he was experiencing financial difficulties well before and separate and apart from any conduct of Citi Mortgage. So I think the causation link is missed. So going back to Judge Tolman's question about the loan modification program, there was an earlier time period before October 1, 2013 where the Federal Home Loan Bank of Chicago did not allow for loan modifications. They later started allowing them. And, in fact, that is the program that Mr. Burleson was ultimately reviewed for, and it was determined that he didn't qualify because his monthly payments would be too high under the program. And he still couldn't meet those given his present income? Right. The general rule is you're trying to get the borrower to a situation where his payments are roughly 31 percent of income. Anything higher is considered to be unaffordable, and you're just going to end up with another default. And once all the numbers were run, he was at, I think, 50 or 55 percent, way too high. So I've talked about the Morrow case and how it really rests on this idea of instructing the borrower to default. And as the Court noted earlier, the Montana Supreme Court has issued two rulings since Morrow. So they've had two opportunities to expand Morrow, two opportunities to say, you know what, we're not going to require that there be an instruction to default for there to be a fiduciary duty. They haven't done that. They've had two more opportunities to do that, and in both cases they have come out and drawn this line in the sand that if the servicer did not instruct the borrower to default, then there is no fiduciary duty, period. So Morrow, and if you read Morrow and you read Jacobson and you read Anderson, those are all cases that reinforce this principle that there has to be an instruction to the borrower in order to state a negligence claim. So the District Court was correct to dismiss the negligence claim. A couple of other points that I think are important here. Mr. Bertelsen is a sophisticated real estate broker and investor. He's a licensed real estate broker both for commercial and residential properties in Montana. He owned multiple commercial buildings and properties in Montana through various companies that he also owned. He's a member of a closely held California limited liability company that operates a commercial building in California. He is not someone who was misled or confused by city mortgage. He was a very knowledgeable person. And again, I just want to reiterate that there is no allegation anywhere in the complaint that he was advised to default or that he wasn't in default before. I'm sorry, his testimony later is that he was in default before he ever contacted city mortgage. The case also falls outside of Morrow because he wasn't told he was locked for a modification or approved. And one thing that I think is really important because Mr. Farris Olson brought up the December 2013 letter, which was really the first contact after the bankruptcy where he was lured, to use the other word that I don't agree with, to apply for a loan modification. That letter is ER 343. And what's really important about that letter is the letter isn't actually inviting him to apply specifically for a loan modification. It's saying, hey, you're in default and we have various options available to you. One is a loan modification. One is a short sale. One is a deed of lieu and foreclosure. And the letter refers to these as potential solutions, potential being in all caps. So he was simply being given information about options that might be available to him, including but not limited to a loan modification. Let me make sure I understand your argument. The bankruptcy court dismissed the case because he'd failed to comply with the plan. And at that point the bank sent a letter because they'd obviously been awaiting the outcome of the bankruptcy proceeding to determine whether or not they could go forward with the foreclosure and said, okay, now that the bankruptcy court has not discharged your loan obligation to us, here are your options. That's correct. That's what triggered the letter. That's right. Okay. Turning to the Montana Consumer Protection Act claim, Mr. Berthelsen raises, there's two issues that he raises to support that claim. One is that the, well, I'm sorry, let me address first his claim that the court was wrong to deny his motion for reconsideration. That's an abuse of discretion standard. Judge Lynch issued a detailed, thoughtful, 8-page decision explaining that the Morrow and Jacobson cases preclude the Montana Consumer Protection Act claims and denied the motion for reconsideration on the ground that the CFPB's allegations in the consent order with City Mortgage were not controlling in the face of those Montana Supreme Court authorities. And pointed out, Judge Lynch's order points out that the FTC's interpretations are by statute in Montana given weight, but the CFPB's interpretations are not. So should we be analyzing the deceptive acts prong of the Montana Consumer Protection Act in light of FT's cases? And if so, how does that affect our analysis here? Was the, I think the argument is that losing or mishandling the documents was deceptive. The court, this court in a case called Burrington that was decided over the summer, and I submitted a letter of supplemental authority last week, decided this precise issue. The attorneys representing Mr. Burrington in that case are the same attorneys representing Mr. Berthelsen here. The complaints are very, very similar. In fact, the Burrington complaint has more detailed allegations in its Montana Consumer Protection Act claim than the complaint that's before the court in this case. Even with that backdrop, the court, this court, found in Burrington that the allegations were not sufficient to state a CPA claim. And one of the basis for that ruling is that there was no instruction to the borrower to default. The court went on to, again, reiterate these distinctions between Morrow and Anderson and explain that in order for a CPA claim to survive, there has to have been an advice to default or a direction to reduce, to make reduced payments or to ignore notices of default. And none of those things happened here. Was that under the deceptive prong? In the Burrington case, I don't think the court distinguished between the deceptive and the unfair prong. It just simply discussed the Montana CPA claim. The Anderson case discussed both the deceptive and unfair prong in deciding that the CPA claim was insufficient to state a claim. Okay. Another ground in Anderson that I think is important here is the court there found that the Montana Consumer Protection Act requires a showing of harm and detrimental reliance, and I explained earlier that there is no allegation anywhere in the complaint of detrimental reliance, and that but for the representations of city mortgage, Mr. Bertelsen would have been able to cure the default. Turning to the constructive fraud claim, that's based on two assertions. The first, that city mortgage told Mr. Bertelsen that he may qualify for a modification when it knew he would not, and second, that his application was complete when it was not. That constructive fraud claim was decided on the summary judgment motion, and there was substantial evidence before the court that was unrebutted that that just wasn't the case. I've already pointed out the one letter that was sent at the very outset of this process that gives Mr. Bertelsen multiple options, including a loan modification but also a short sale and DW that he may be eligible for, and the word may appears in that letter several times. It's also referred to as a potential option. Also, there were other letters sent that explained to him that even though he had submitted paperwork and financial documentation, he may have to submit more. So he was never misled into thinking that he was done and his application was complete. The letter at ER 356 says, I've been assigned to assist with your review and to provide updates on additional documents that may be requested by the underwriter. So there, Mr. Bertelsen is told documents may be requested. ER 396 says, please keep in mind that based on your particular situation, you may be asked to provide additional documents. The letter also discloses some documents may become stale dated and updated information will have to be provided. So Mr. Bertelsen was told repeatedly that he may be required to submit additional materials, and so I don't think that the fact that we requested additional materials can be deemed to be a constructive fraud. I mentioned earlier the declaration of the city mortgage employee who explained how loan modifications programs change over time, and so it can't ever be known when a particular customer is being either solicited or submitting an application what's going to be available at a particular point, and that was true here with the Federal Home Loan Bank of Chicago offering a program that wasn't previously available, and that was also testimony that was unrebutted. My final point is there is an appeal as to the attorney fee award in city mortgages' favor. That's an abuse of discretion standard. Judge Lynch submitted a very detailed ruling on that. He cut the attorney's fees that city requested to about 15% of what it requested, so I think the court did apply its discretion very much in Mr. Bertelsen's favor. And you didn't cross-appeal the substantial haircut that the court gave? No. Thank you. I think you have under a minute for rebuttal. Thank you, Your Honor. Brian Miller for Appellant. On page 115 of the per-year decision, they say that we have rejected the lender's argument that ascertainable losses requires a showing of actual damages, and the provision that provides the private right of action is at 30-14-133, and I think part of the mystery as to why is there such a low threshold is because it's a remedial statute. The focus is on the conduct of the business, and in fact there is not actually a detrimental reliance analysis under a Consumer Protection Act claim. And the Consumer Protection Act claim imposes a statutory duty on lenders not to engage in unfair or deceptive practices, and there's absolutely no requirement on a threshold level that the borrower has to show detrimental reliance, and there's no requirement either that they have to get that financial advice that is required for a common law duty. The common law duty and the statutory duty are completely separate. This Court recognized that in Compton, and if the Court goes back to the Baird case, which is a 1992 case, it will see that there was absolutely no instruction to skip a payment or take any other action, but that was the first case in which the Montana Supreme Court applied the Consumer Protection Act to a bank. And so this idea that the borrower has to show that they were given detrimental financial advice, if that was true, then Baird would have been incorrect. But it's the first case that shows that. I see I'm out of time. Thank you. Thank you. We thank both sides for their arguments. In the case of Berthelsen v. City Mortgage is submitted, and the case of Lyons v. Multnomah County is submitted on the briefs. And with that, we are adjourned for this session.
judges: Tallman, Ikuta, Bough